UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LARRY THOMAS WILLIAMS III,
         Plaintiff,

                    Case # 15-CV-468-FPG

v.

                    DECISION & ORDER

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,
         Defendant.
_____

## INTRODUCTION

Plaintiff Larry Thomas Williams III ("Plaintiff") brings this action to challenge the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). ECF No. 1. The Court has jurisdiction over this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 7, 9. For the reasons stated below, Plaintiff's Motion (ECF No. 7) is GRANTED, the Commissioner's Motion (ECF No. 9) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On January 26, 2012, Plaintiff protectively filed applications for DIB and SSI under the Act. Tr.[1] 9. In both applications, Plaintiff alleges disability since December 27, 2011 due to schizophrenia. Tr. 118, 125. After these applications were denied, a hearing was held before Administrative Law Judge Stanley Moskal, Jr. ("the ALJ") on August 7, 2013. Tr. 30-45. At the

---

[1] References to "Tr." are to the administrative record in this matter.

hearing, Plaintiff appeared with his non-attorney representative and testified. *Id.* On November 26, 2013, after considering Plaintiff's applications *de novo*, the ALJ issued a decision finding that Plaintiff is not disabled within the meaning of the Act. Tr. 9-21. That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 1, 2015. Tr. 1-3. Plaintiff then filed this civil action. ECF No. 1.

**LEGAL STANDARDS**

**I.    Disability Determination**

The Act defines "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). Social Security Administration ("SSA") regulations outline the five-step process used to determine whether a claimant is "disabled" under the Act. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is engaged in any substantial gainful work activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled. *Id.* If the claimant does, the analysis proceeds to step three.

At step three, the ALJ must determine whether the claimant has an impairment (or combination of impairments) that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("the Listings"). If the impairment does meet or equal a condition in the Listings and the durational requirement (20 C.F.R. § 404.1509) is satisfied, then the claimant is disabled. 20 C.F.R. § 404.1520(d). If it does not, the

ALJ will make a finding regarding the claimant's residual functional capacity ("RFC"), which is an assessment of what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is then used at steps four and five. 20 C.F.R. § 404.1520(e).

The fourth inquiry is whether, given the claimant's RFC, the claimant can still perform his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform his or her past relevant work, the claimant is not disabled. *Id.* If he or she cannot, the ALJ proceeds to step five.

At the fifth and final step, the ALJ must consider the claimant's RFC as well as his or her age, education, and work experience to determine whether the claimant can make an adjustment to other work for which there are a significant number of jobs in the national economy. 20 C.F.R. § 404.1520(g). If the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the claimant cannot make that adjustment, then the claimant is disabled. *Id.*

The burden of proving the first four elements is on the claimant, and the burden of proving the fifth element is on the Commissioner. *Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

II.     **District Court Review**

District Court review of the Commissioner's decision is not *de novo*. *See, e.g., Richardson v. Barnhart*, 443 F. Supp. 2d 411, 416 (W.D.N.Y. 2006) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). The Commissioner's decision may only be set aside if it is not supported by "substantial evidence" or is the product of legal error. *See, e.g., Miller v. Colvin*, 85 F. Supp. 3d 742, 749 (W.D.N.Y. 2015); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). Substantial evidence means "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)) (internal quotation marks omitted).

## DISCUSSION

### I. The ALJ's Decision

In this case, the ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 27, 2011, his alleged onset date. Tr. 11. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: "schizophrenia/psychotic disorder and history of alcohol and drug abuse." Tr. 12. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment in the Listings. Tr. 12-14.

The ALJ then determined that Plaintiff retains the RFC to perform the full range of work at all exertional levels[2] but with the following non-exertional limitations: "he has moderate (defined as limited, but still able to function satisfactorily) limitations in maintaining concentration, persistence, and pace. The claimant is able to understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting." Tr. 14.

At step four the ALJ found that Plaintiff, who was 20 years old at the time of his alleged onset date, does not have any past relevant work experience. Tr. 19.

At step five, the ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App'x. 2, to determine that Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy given his RFC, age, education, and

---

[2] Jobs are separated into five categories based on their physical exertion requirements: sedentary, light, medium, heavy, or very heavy. 20 C.F.R. §§ 404.1567, 416.967.

work experience. Tr. 20. Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. *Id.*

## II.     Plaintiff's Challenges to the ALJ's Decision

Plaintiff argues that remand is warranted for two alternative reasons: (1) the ALJ failed to consider whether Plaintiff's schizophrenia prevented him from remaining compliant with his treatment and (2) the ALJ ignored employee evaluations in the record from the Buffalo Board of Education Food Service Department, where Plaintiff worked part-time in 2011 and 2012. ECF No. 7-1. The Court agrees.

### A.     Compliance with Treatment

If a claimant fails to follow treatment prescribed by his or her physician and that treatment can restore his or her ability to work, then the claimant will not be considered disabled unless he or she has a "good reason" for not following the treatment. 20 C.F.R. §§ 404.1530(a)-(b), 416.930(a)-(b). When determining whether a claimant has an acceptable reason for failing to follow the prescribed treatment, the ALJ is obligated to take into account the claimant's mental limitations. 20 C.F.R. §§ 404.1530(c), 416.930(c). This is because a person "who suffers from psychological and emotional difficulties may lack the rationality to decide whether to continue treatment or medication." *Thompson v. Apfel*, No. 97-CV-7697, 1998 WL 720676, at *6 (S.D.N.Y. Oct. 9, 1998); *Benedict v. Heckler*, 593 F. Supp. 755, 760–61 (E.D.N.Y. 1984); *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 277–78 (W.D.N.Y. 2005).

Here, Plaintiff was prescribed Haldol to treat his paranoid schizophrenia. Tr. 243-47. In finding that Plaintiff is not disabled under the Act, the ALJ relied heavily on Plaintiff's failure to fully comply with his medication. Tr. 14-19. For example, the ALJ found that Plaintiff was not entirely credible because "[t]he record reflects significant gaps in the claimant's history of treatment and non-compliance with medications" and "the record also reveals that when the

claimant is compliant with treatment and medications, his symptoms are controlled." Tr. 18. The ALJ also gave "little weight" to the opinion of nurse practitioner Sharon Yager because the ALJ found it to be inconsistent with evidence showing "that when the claimant takes his medication as prescribed, his symptoms are well controlled." Tr. 19. With respect to Plaintiff's GAF scores, the ALJ concluded that Plaintiff was responding well to medication and gave those scores "great weight" even though some scores indicated severe limitations. *Id.* The ALJ summarized his RFC determination by stating that the evidence in the record "shows that when the claimant is compliant with medications, his concentration and attention are intact, he is able to socialize with others, and he functions well." *Id.* Despite basing his decision nearly entirely on Plaintiff's failure to fully comply with his treatment, the ALJ never considered whether that failure was willful or whether it was a symptom of Plaintiff's paranoid schizophrenia. Tr. 14-19. Therefore, the ALJ failed to apply the proper legal standard and remand is necessary. *Frankhauser*, 403 F. Supp. 2d at 277-78; *Thompson*, 1998 WL 720676, at \*6; *Canty v. Colvin*, No. 6:14-CV-06713, 2015 WL 9077651, at \*4 (W.D.N.Y. Dec. 16, 2015); *Pabon v. Colvin*, No. 6:14-CV-06532, 2015 WL 5692845, at \*6 (W.D.N.Y. Sept. 28, 2015).

**B.     Employee Evaluations from the Buffalo Board of Education**

With respect to the type of evidence that is considered when determining whether a claimant is disabled, the Act draws a distinction between "acceptable medical sources" and "other sources." Only an "acceptable medical source" can establish the existence of a medically determinable impairment, only "acceptable medical sources" can provide medical opinions, and only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight. *See* 20 C.F.R. §§ 404.153(a), 416.913(a), 404.1527(a)(2), 416.927(a)(2), 404.1527(c)(2), 416.927(c)(2).

However, evidence from "other sources," including from non-medical sources such as the claimant's past employer, "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Indeed, "[a]n opinion from a 'non-medical source' who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source." *Id.* SSR 06-03p makes clear that the ALJ must consider all evidence, including evidence from non-medical sources, when he or she is determining whether a claimant is disabled. *Losquadro v. Astrue*, No. 11-CV-1798, 2012 WL 4342069, at *16 (E.D.N.Y. Sept. 21, 2012) (quoting *Kelly v. Astrue*, No. 1:11-CV-00738, 2012 WL 3638029, at *8 (E.D. Cal. Aug. 21, 2012)). With respect to an opinion from a non-medical source who has seen the claimant in his or her professional capacity, SSR 06-03p also states that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939.

Here, the record includes reports from the Buffalo Board of Education Food Service Department, where Plaintiff worked part-time as a substitute food service worker from August 2011 to December 2012. Tr. 142-46. On November 6, 2011, Plaintiff was described as "below average" in every job performance category.[3] Tr. 144. In the comments section of that report, Plaintiff's manager added that Plaintiff had sprayed a wall socket in the kitchen, continuously washed his hands so he could throw paper towels in the basket, did not pay attention to the children in line, swore in front of the kids, and hovered around the register and the women's

---

[3] Those categories were: duties, ability, attitude, appearance, quality of work, cooperation, punctuality, follows instructions, and attendance.

7

locker room. *Id.* The manager also recounted an incident in which Plaintiff was confronted about having an iPod in his ears at work and responded by saying, "what the f___, I was in my zone." *Id.* (alteration in original). On October 12, 2012, Plaintiff was again described as "below average" in every job performance category.[4] Tr. 146. Plaintiff's manager added that Plaintiff lacked "understanding/ability to complete work" and had a "need for constant supervision." *Id.* On October 17, 2012, Plaintiff's manager stated that Plaintiff was not acceptable in the performance of his assigned duties and had a "need for marked improvement in assigned duties." Tr. 145. In the comments section of that report, Plaintiff's manager noted that "[a]t the end of the day while cleaning [Plaintiff] went out where the kids were eating lunch and ask[ed] a girl for her age & number." *Id.* On November 21, 2012, Plaintiff's manager noted that Plaintiff "needs to learn how to listen when somebody says not to do something" and that Plaintiff again made an inappropriate comment to a student. Tr. 143.

These evaluations, if considered, would clearly have an effect on the outcome of this case. *See* SSR 85-15, 1983-1991 Soc.Sec.Rep.Serv. 343 (Jan. 1, 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."). The ALJ concluded that Plaintiff has the RFC to "understand, remember, and carry our simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine setting." Tr. 14. However, the ALJ did not discuss any of the evaluations from the Buffalo Board of Education in his decision or otherwise allow the Court to follow his reasoning with respect to such evidence. *See* SSR 06-03p, 2006 WL

---

[4] This form included the following categories: ability, accepts corrective criticism, attendance, attitude, completes duties in a timely manner, cooperative, follows instructions and directives, proper uniform including hair net, punctuality, quality of work, and team player. Tr. 146.

2329939. Because the ALJ failed to apply the correct legal standard regarding this "other source" evidence from the Buffalo Board of Education, remand is warranted.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED. This matter is REMANDED to the Commissioner for further administrative proceedings in accordance with this decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: 8/12/16
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court